1 Joe Dean Crawford, M.D.
2 1933 L Avenue, #5
3 National City, CA 92138
4 (619) 208-2745
5
6
7
8
9

**FILED**

Mar 21 2022

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ charlest          DEPUTY

10 ## UNITED STATES DISTRICT COURT

11 ## SOUTHERN DISTRICT OF CALIFORNIA

NINTH JUDICIAL DISTRICT
12
13 Case File No: **'22CV376  CAB MDD**

14 Joe Dean Crawford,
15          *Plaintiff.*

16                    vs.

17 California Medical Board by its individual members in their official capacities as:
18     Kristina D. Lawson, Randy W. Hawkins, Laurie Rose Lubiano, Ryan Brooks,
19     Alejandra Campoverdi, Dev GnanaDev, James M. Healzer,
20     Howard R. Krauss, Asif Mahmood, David Ryu, Richard E. Thorp, Eserick "TJ"
21     Watkins, and Felix C. Yip,  Joseph Salazar, Kathryn Taylor,
22 North Carolina Medical Board by its individual members in their official capacities
23 as:  Venkata Jonnalagadda, John W. Rusher, Michaux R. Kilpatrick, William
24 "Bill" Brawley, W. Howard Hall, Christine M. Khandelwal, Joshua Malcolm,
25 Vernell McDonald-Fletcher, Damian F. McHugh, Shawn P. Parker, Jerri L.
26 Patterson, Anuradha Rao-Patel,  and Devdutta "Dev" G. Sangvai
27 Federation of State Medical Boards of the United States, Incorporated  Humayan
28 Chaudhry, R. David Henderson, National Board of Medical Examiners of the
29 United States
30          *Defendants.*

31 ## COMPLAINT

32 ## Jurisdiction

FinCom                              1                              2022 cv

1      Jurisdiction for this Court to hear and declare rights and to then determine

2    this complaint is grounded upon federal and state law regarding this diversity

3    action where the amount in controversy exceeds $75,000 exclusive of interest and

4    court costs.  Plaintiff requests this Court take notice of the grounds for the Court to

5    act and detailed below:

6        1. *United States Law.*
7             a. United States Constitution, 14th Amendment.
8                i. Due Process Clause.

9                ii. Equal Protection Clause.

10               iii. Full Faith & Credit Clause; Article 1, Section

11            b. Title 28 United States Code, § 1332

12            c. Title 28 United States Code, § 1738.

13            d. Title 28 United States Code, §§ 2201, § 2202.

14            e. Title 42 United States Code, § 1983.

15            f. Title 42 United States Code, § 1988.

16            g. Title 44 United States Code, § 1507.

17        2. *California State Law.*
18            a. Section 1, Article 1 of Declaration of Rights of the California State
19                Constitution. "Right to Privacy Law."
20
21            b. Section 7, Article 1 of Declaration of Rights of the State Constitution.

22            c. California Business & Professions Code, § 2151.

23            d. California Evidence Code, § 451 (Judicial Notice).

e.  California Evidence Code, § 1452 (b).

f.  California Civil Code, §§ 45a, § 45, § 44 and § 43.

g.  California Civil Code, § 3425.3.

h.  California Civil Procedure Code, § 1725.

3. *Federal Rules of Civil Procedure and Evidence.*
   a.  Federal Rules of Civil Procedure 8, 56, and 57.

   b.  Federal Rule of Evidence 201 (Federal Judicial Notice).

   c.  Fed. R. Evid. 902 (2) (A).

4. *Statute of Limitations*: Issues.
   a.  California Code of Civil Procedure § 340 (c) – '*each* defamatory statement'.

   b.  *Shively v. Bozanich*, 31 Cal. 4th 1230, 1237 (2003).

   c.  California Civil Code, § 3425.3.

## COUNT ONE

Plaintiff intends to prove all the following facts are highly and substantially more probable to be true than not true:

1. That Plaintiff first discovered that his name in California had been defamed when he was given a March 19, 2021 email and forwarded a copy of Defendant Henderson's January 4 verification form.

2. That the phrase "public action" is the same thing as a "disciplinary action" according to the definitions given to the public by the North Carolina medical board (North Carolina Medical Board, 2009).

3. Defendant has been employed by the North Carolina medical board for decades  (North Carolina Medical Board, 2009).

4.  That the phrase "public action" means either of one of five (5) "disciplinary actions" (North Carolina Medical Board, 2009).

5. That those five (5) "disciplinary actions" are:  (1) a public letter of concern, (2)  consent orders, (3) orders of discipline made after a hearing, (4) notice and entry of revocation of licensure, or  (5) an order of summary suspension (North Carolina Medical Board, 2009).

6.  That those "public actions" account for an exceedingly small minority of licensure cases.

7. That those times the N. C. medical board takes no action in most cases where it receives a report.

8. That during the month of January of 1982, Dr. Crawford and each physician licensed in North Carolina were required to register in every even numbered year (North Carolina Session Laws as Chapter 597 of 1957, Chapter 929, § 5, and Chapter 196 at § 2 of 1969 and of 1979 are respectively incorporated by reference).

9. That by judicial notice the year 1982 was an "even-numbered month."

10. During March of 1982, the meeting minutes of the North Carolina medical board fails to reflect any notice of a failure of Dr. Crawford to register as required by law.

11. That during and up to the May 1982 meeting of the State medical board, the board did not have authority to terminate Dr. Crawford's licensure without notice and hearing.

12. That on May 8, 1982, the State Medical Board met and terminated a report that Dr. Crawford had surrendered his license certificate to practice medicine on April 1, 1982. (The May 1982 meeting minutes of the North Carolina medical boards are herewith incorporated by reference).

13. That the May 1982 North Carolina medical board did not take any action against the plaintiff's license in contradiction to defendant's proclamations.

14. That the North Carolina medical board has never taken any "disciplinary action" against the plaintiff's license in contradiction to defendant's proclamations.

15. That when the State medical board met in May 1982, it met to help the Plaintiff by accepting a report that he had surrendered his license as information only.

16. That when the North Carolina medical board accepts any item of information, then; it is an indication that no further action is needed,

17. That when the State medical board accepts as information, then; it acts as an indication that the practitioner under review has met or exceeded State standards for a safe and competent medical practice.

18. That Henderson as custodian of the records of the State board of medicine, knew or should have checked the May 1982 board meeting minutes before making the complained statements of fact.

19. That Henderson published certain objectionable facts on 6 January of 2021.

20. Plaintiff discovered the publication during around 19 March of 2021.

21. The facts were published under the seal of the North Carolina Medical Board which is an indication of the official nature of the Board's actions since 1884 (Proctor & Long, 1959, p. 26).

22.  The facts were published in the form of an official document in a licensure verification form as an accurate and truthful report to the California medical board.  Plaintiff paid the required fifty ($50.00) to have what he thought would have been an accurate report published.

23.  That Henderson made one or more of the statements complained of to a person other than the Plaintiff.

24.  That this third person reasonably understood that the statement was about Dr. Crawford.

25.  That an average person would understand that Henderson's statement was an indication of a "disciplinary action" as defined by the North Carolina medical board.

26.  That Henderson did continue the maliciousness by publishing that Dr. Crawford's "public action" was associated with loss of authority to practice medicine in the State of North Carolina.

27.   Henderson further published that Dr. Crawford's license had terminated on April 1, 1982.

28.   April 1, 1982, is the date that Henderson published as the date that supports his libel that Dr. Crawford's license to practice medicine in North Carolina became "inactive."

1   29.  That defendant Henderson knew or should have known that "public action"

2        is the same meaning as a disgraceful and dishonorable "disciplinary action."

3        (Sheppa, 2009).

4   30.  That defendant Henderson knew or should have known that assignment of

5        the phrase "public action" to a doctor meant that the doctor has engaged in

6        "behavior or practice that deviates significantly from accepted standards and

7        that that has the potential to extend beyond the circumstances of a single

8        case" (North Carolina Medical Board, 2009).

9   31.  That because of the facts and circumstances known to the reader of the

10       statement, it tended to injure Dr. Crawford in his occupation or to expose

11       him to hatred, contempt, ridicule, or shame or to discourage others from

12       associating or dealing with him.

13   32.  That the statement made by defendant Henderson was false.

14   33.   That Dr. Crawford suffered harm to his liberty interests and property rights

15        in his license, harm to his business, and to his occupation including monies

16        and time spent because of defendant's false statement.  That the statement

17        was a substantial factor in causing harm to Dr. Crawford.

18   34.  That North Carolina statutes do not provide any suitable or adequate post-

19        deprivation remedies for violations of plaintiff's civil rights in being

20        deprived of the rights in a license to practice medicine.

35. Those times relevant to this Complaint, plaintiff has never received due process required under North Carolina law before the Chief Executive Officer for the State medical board published his false reports about plaintiff's licensure history in the State of North Carolina.

36. That defendant acted to defame the plaintiff using the color of state law and other emblems of state authority to deprive plaintiff while defendant had neither authority nor excuse.

37. That the defendant Henderson failed to use reasonable care to determine the truth or falsity of the statement.

In this count one (1) of this complaint, Plaintiff sues defendant Henderson for the defamation and injury caused by the publishing of the statement that there had been a "public action" taken against the Plaintiff by the North Carolina medical board.

## COUNT TWO

Plaintiff incorporates all the statements of fact in count one of the complaints by reference thereto. In this count two (2) of this complaint, Plaintiff sues defendant Henderson for the defamation and injury caused by the publishing of the statement that Doctor Crawford was no longer authorized to practice medicine in North Carolina because he had failed to renew his license on April 1, 1982.

1    Plaintiff intends to prove all the following facts are highly and substantially

2    more probable to be true than not true.

3    1.  That North Carolina had a system of registration of licenses that dates back

4        to the 1859 according to the book entitled (One hundred years of the North

5        Carolina State Board of Medical Examiners, 1859-1959).

6    2.  The system of medical practice registration at the time the North Carolina

7        Board of Medical Examiners met to vote on Dr. Crawford's behalf, stated:

8        "Every person heretofore or hereafter licensed to practice medicine by said

9        Board of Medical Examiners shall, during the month of January 1958, and

10       during the month of January in every even numbered year thereafter, register

11       with the secretary treasurer of said Board" [North Carolina Session Laws of

12       1957 at Chapter 597].

13   3.  That Chapter 597 of the 1957 Legislature further provided that: "Should a

14       physician fail to register and pay the fees imposed, and should such failure

15       continue for a period of 30 days the license of such physician may be

16       suspended by the Board, after notice and hearing at the next regular meeting

17       of the Board"

18   4.  That defendant Henderson as executive secretary and administrator knew or

19       should have known that the March 1982 meeting minutes of the North

Carolina Board of Medical Examiners' list of delinquent registrants does not

and did not include the name of Dr. Crawford (NC Medical Board, 1982).

5. That Defendant R. David Henderson failed to use rudimentary or reasonable

care or concern to determine the truth or the falsity of the statement that Dr.

Crawford failed to renew his license on April 1, 1982.

6. That defendant knew or should have known that 1982 was one of those

"even numbered" years referred to in Chapter 597 of the 1957 Registration

Act.

7. That defendant Henderson knew or should have known that no Board

meeting minutes provide support for his false statements regarding Dr.

Crawford's registration status when the May 1982 Board met.

8.   That defendant Henderson knew or should have known that no Board

meeting minutes reveal any suspension of Dr. Crawford's license for failure

to register during January of 1982.

9. That defendant Henderson knew or should have known that no Board

meeting minutes reveal any attempt to serve notice on Dr. Crawford for

failure to register his license in 1982.

10. That defendant Henderson knew or should have known that the May 1982

Board meeting vote regarding Dr. Crawford never cited any failure of Dr.

Crawford to have registered during 1982.

## COUNT THREE

Plaintiff incorporates all the statements of fact in count one of the complaints by reference thereto.  In this count three (3) of this complaint, Plaintiff sues defendant Henderson for the defamation and injury caused by the publishing of the statement that Doctor Crawford was no longer authorized to practice medicine in North Carolina because his license became "inactive" on  April 1, 1982.

Plaintiff intends to prove all the following facts are highly and substantially more probable to be true than not true.

1. That defendant Henderson knew or should have known that the right to practice medicine in North Carolina and the license as evidence of that right to practice medicine are two (2) entirely different entities.

2. That defendant Henderson knew or should have known that North Carolina has a system of registration of licenses that dates back to the 1950's.

3. That defendant Henderson knew or should have known that the registration of a license and the 'renewal' of a medical license are two different things, where;  only registration of a medical license is recognized under North Carolina medical licensing law.

4. That defendant Henderson knew or should have known that Dr. Joe Dean Crawford became licensed to practice medicine on October 13, 1979, by the North Carolina Board of Medical Examiners [Minutes of North Carolina Board of Medical Examiners meeting in Wilmington to confer certificates of medicine from that Board; judicially noted from the Board's website].

5. That defendant Henderson knew or should have known that the May 1982 vote of the North Carolina Board of Medical Examiners established a permanent licensure for the plaintiff Joe Dean Crawford, M.D. [Plaintiff judicially noted that the Board vote included a promise of help at "any time", a noun phrase with significance in law and customs of the medical board and English entomology.

6. That defendant Henderson knew or should have known of the difference in the May 8, 1982, Board's use of the noun phrase "any time", rather than the simpler one-word adverb of "anytime."

7. That defendant Henderson knew or should have known of Chapter 94 of the 1995 Legislative Session of North Carolina which established a new medical board named the "North Carolina Medical Board."

8. That defendant Henderson knew or should have known that Dr. Crawford has never been licensed by the North Carolina Medical Board.

9. That Defendant Henderson's statement that Dr. Crawford's license became inactive on April 1, 1982, is false.

10. That defendant Henderson' statement was published to a third party in California during January of 2021.

11. That the third person reasonably understood that Henderson's statement was about Dr. Crawford.

12. That this third party reasonably understood Henderson's statement to mean that Dr. Crawford's ability to practice medicine became suddenly "inactive" on April 1, 1982.

13. That this third party or any average reader would have understood the statement under the seal of the North Carolina Medical Board to mean that Dr. Crawford had no authority to practice medicine in North Carolina on January 6, 2021.

14. That defendant Henderson knew or should have known that the ability for the North Carolina Medical Board to determine whether a license is "inactive" is a matter of statutory authority from the North Carolina Legislature.

15. That defendant Henderson knew or should have known that the North Carolina Legislature did not authorize the reporting of a license to practice medicine as "inactive" until the matter as to whether a physician's license

1    could be considered "inactive" was addressed by Senate Bill 583 in the 1997

2    Legislature.

3    16. That defendant Henderson knew or should have known that the 1997

4    Legislature contemplated and directed a prospective rather than a

5    retrospective change in the law [North Carolina Session Laws of 1997,

6    Chapter 481, § 3 (rewriting N.C.G.S. 90-15.1).

7    17. That defendant Henderson knew or should have known that Chapter 481 of

8    the 1997 laws of North Carolina stated a change in the registration law as

9    follows:

10        "Every person licensed to practice medicine by the North Carolina
11        Medical Board shall register annually with the Board within 30 days
12        of the person's birthday.  A person who registers with the  Board shall
13        report to the Board the person's name and office and residence
14        address and any other information required by the Board, and shall
15        pay a registration fee fixed by the Board not in excess of one hundred
16        dollars ($100).  A physician who is not actively engaged in the
17        practice of medicine in North Carolina and who does not wish to
18        register the license may direct the Board to place the license on
19        inactive status.  For purposes of annual registration, the Board shall
20        use a simplified registration form which allows registrants to confirm
21        information on file with the Board.  A physician who fails to register
22        as required by this section shall pay an additional fee of twenty dollars
23        ($20.00) to the Board.  The license of any physician who fails to
24        register and who remains unregistered for a period of 30 days after
25        certified notice of the failure is automatically inactive. [ Sess. Laws
26        N.C., 1997-481, Senate Bill 583, page 4].

18. That defendant Henderson knew or should have known that the 1997 law could not be retrospectively applied to annul the May 1982 vote sustaining Dr. Crawford's licensure.

19. That defendant Henderson knew or should have known that the North Carolina Board of Medical Examiners does not have any record in its files of any certified notice being served on Dr. Crawford at any time during 1982 indicating a failure to register.

20. That defendant Henderson knew or should have known that the North Carolina Board of Medical Examiners does not have any record in its files of any certified notice being served on Dr. Crawford at any time during 1982 indicating any determination to find his license to be "inactive."

21. That in this count of the complaint, Defendant Henderson failed to use reasonable care to determine the truth or falsity of the statement complained of.

## COUNT FOUR

Plaintiff incorporates all the statements of fact in count one of the complaints by reference thereto. In this count four (4) of this complaint, Plaintiff sues defendant Henderson for the defamation and injury caused by the publishing of the statement that Doctor Crawford was no longer authorized to practice

1   medicine in North Carolina because his license and authority to practice there

2   was accepted by the Board as "voluntarily surrendered."

3   Plaintiff incorporates all the statements of fact in count one of the complaints by

4   reference thereto. In this count five (5) of this complaint, Plaintiff sues

5   defendant Henderson individually and in his official capacity as Chief

6   Executive Officer for the defamation and injury caused by the publishing of the

7   statement that Doctor Crawford was no longer authorized to practice medicine

8   in North Carolina because his license and authority to practice there was

9   accepted by the Board as "voluntarily surrendered" on April 1, 1982.

10   Plaintiff intends to prove all the following facts are highly and substantially

11   more probable to be true than not true.

12   1. That the defendant as an employee of the North Carolina Medical Board did

13      publish on the internet and to a specific third party in California that Dr.

14      Crawford's license to practice medicine in North Carolina had been

15      "voluntarily surrendered" on April 1, 1982.

16   2. That the defendant Henderson did publish the statement as fact rather than

17      opinion on their website and in other places known to a third party.

18   3. That this false statement by the defendant Henderson chief administrative

19      officer for the North Carolina medical board was immensely derogatory and

1   damaging to Dr. Crawford's occupation, reputation for telling the truth, and

2   his character.

3   4. That this third party to whom the false statement was communicated would

4   reasonably understand that the statement was about Dr. Crawford.

5   5. That this third party to whom the false statement was published would

6   understand that Dr. Crawford was no longer authorized to practice medicine

7   in North Carolina notwithstanding a May 1982 meeting of the NC medical

8   board.

9   6. That an average person would understand that defendant Henderson's

10   statement was an indication of a "disciplinary action" as defined by the

11   North Carolina board rules and customs (North Carolina General Assembly,

12   2021).

13   7.  That defendant Henderson knew or should have known that it is widely

14   known that "voluntary surrender of license or certification means a surrender

15   made after a notification of investigation or a formal official request by a

16   Federal or state licensing or certification authority for a health care

17   practitioner, health care entity, provider, or supplier to surrender the license

18   or certification (including certification agreements or contracts for

19   participation in Federal or state health care programs).  The definition also

20   includes those instances where a health care practitioner, health care entity,

1    provider. Or supplier voluntarily surrenders a license or certification

2    (including program participation agreements or contracts) in exchange for a

3    decision by the licensing or certification authority to cease an investigation

4    or similar proceedings, or in return for not conducting an investigation or

5    proceeding, or in lieu of a disciplinary action. [Definitions at Title 45 Code

6    of Federal Regulations, § 60.3; 78 FR 25860, May 6, 2013]"

7    8.  That defendant knew or should have known that it is widely known

8    throughout the entire United States that a "voluntary surrender" of a license

9    to practice medicine means a serious disciplinary action that is reportable to

10   the National Practitioner Databank (NPDB) [Guidebook of NPDB].-

11   9.  That defendant Henderson knew or should have known that no report had

12   ever been submitted to the NPDB by the North Carolina medical board.

13   10.  That the defendant knew or should have known that no authorized report,

14   that is; a report signed or under seal of the North Carolina Board of Medical

15   Examiners had ever been issued by that medical board.

16   11.    That defendant Henderson knew or should have known that no report of

17   an acceptance of an April 1, 1982 "voluntary surrender" had ever been

18   submitted to him or to his office by the North Carolina medical board.

12. That defendant Henderson knew or should have known by history that the medical board has over a hundred years kept a transcribed and "regular record of its proceedings [N.C.G.S. § 90-16 (a); § 33 of 2019-191].

13. That defendant Henderson knew or should have known by history that no record of any proceeding of the North Carolina medical board and Dr. Crawford appears in any records of the 1982 medical board meetings.

14. That defendant Henderson knew or should have known by history that "before the Board shall take disciplinary action against any license granted by it, the licensee shall be given a written notice indicating the charges made against the licensee" [N. C. G. S. § 90-14.2 (a); HB 228, Session Laws 2019, Chapter 191].

15. That defendant Henderson knew or should have known by history that there is no record of the North Carolina Board of Medical Examiners ever providing Dr. Crawford with any charges or "written notice of charges made against the licensee."

16. Those defendant Henderson knew or should have known by history that in 1982 "any notice required by the laws of the medical board would have required notice served by either a board member or "by an officer authorized by law to serve process , or by registered mail, return receipt requested.   N. C. G. S. § 90-14.3  [NC Session Laws 1995, Chapter 405, § 5].

1    17. That defendant Henderson knew or should have known that the May 1982

2         board had no record of any member of that board serving notice on Dr.

3         Crawford or evidence of any receipt for delivery of any "registered mail"

4         notice of disciplinary charges. N. C. G. S. § 90-14.3 [NC Session Laws

5         1995, Chapter 405, § 5].

6    18. Those defendant Henderson knew or should have known that the May 1982

7         board considered an unauthorized report of a "voluntary surrender" and

8         voted to accept it as information.

9    19. That defendant Henderson knew or should have known that the May 1982

10        board vote closed the issue of "voluntary surrender" of the license of

11        plaintiff.

12   20. That defendant Henderson knew or should have known that no report of an

13        acceptance of an April 1, 1982 "voluntary surrender" had ever been

14        submitted to him or to his office by the members of the North Carolina

15        medical board.

16   21.  That the defendant R. David Henderson failed to use reasonable care to

17        determine the truth or falsity of the statement.

18                          **COUNT FIVE**

19   In this count five (5) of this complaint, Plaintiff sues defendants Federation of

20   State Medical Boards and its Chief Executive Officer for the defamation and

FinCom                           21                          2022 cv

1   injury caused by the publishing of the statement that Doctor Crawford was no

2   longer authorized to practice medicine in North Carolina because his license

3   and authority to practice there was accepted by the Board as "voluntarily

4   surrendered" on April 1, 1982.

5   Plaintiff intends to prove all the following facts are highly and substantially

6   more probable to be true than not true.

7   **1.** That the defendants and employees of the Federation of State Medical

8   Boards did publish on the internet and to a specific third party in California

9   that Dr. Crawford's license to practice medicine in North Carolina had been

10   "voluntarily surrendered" on April 1, 1982.

11   **2.** That the defendants of the 'Federation' did publish the statement as fact

12   rather than opinion on their website and in other places known to a third

13   party.

14   **3.** That this false statement by the defendant Federation and its chief officer

15   was immensely derogatory and damaging to Dr. Crawford's occupation,

16   reputation for telling the truth, and his character.

17   **4.** That this third party to whom the false statement was communicated would

18   reasonably understand that the statement was about Dr. Crawford.

19   **5.** That this third party to whom the false statement was published would

20   understand that Dr. Crawford was no longer authorized to practice medicine

1  in North Carolina notwithstanding a May 1982 meeting of the NC medical

2  board.

3  **6.** That an average person would understand that defendant 'Federation'

4  statements were an indication of a "disciplinary action" as defined by the

5  North Carolina board rules and customs (North Carolina General Assembly,

6  2021).

7  **7.** Those defendants of the 'Federation' knew or should have known that it is

8  widely known that "voluntary surrender of license or certification means a

9  surrender made after a notification of investigation or a formal official

10  request by a Federal or state licensing or certification authority for a health

11  care practitioner, health care entity, provider, or supplier to surrender the

12  license or certification (including certification agreements or contracts for

13  participation in Federal or state health care programs).  The definition also

14  includes those instances where a health care practitioner, health care entity,

15  provider. Or supplier voluntarily surrenders a license or certification

16  (including program participation agreements or contracts) in exchange for a

17  decision by the licensing or certification authority to cease an investigation

18  or similar proceedings, or in return for not conducting an investigation or

19  proceeding, or in lieu of a disciplinary action. [Definitions at Title 45 Code

20  of Federal Regulations, § 60.3; 78 FR 25860, May 6, 2013]"

1   **8.** That it is widely known throughout the entire United States that a "voluntary

2   surrender" of a license to practice medicine means a serious disciplinary

3   action that is reportable to the National Practitioner Databank (NPDB)

4   [Guidebook of NPDB].-

5   **9.** Those defendants of the 'Federation' knew or should have known that no

6   report had ever been submitted to the NPDB by the North Carolina medical

7   board.

8   **10.** Those defendants of the 'Federation' knew or should have known that no

9   report of an acceptance of an April 1, 1982 "voluntary surrender" had ever

10   been submitted to it by the North Carolina medical board.

11   **11.** That the defendants knew or should have known that no authorized report,

12   that is; a report signed or under seal of the North Carolina Board of Medical

13   Examiners had ever been issued by that medical board.

14   **12.** Those defendants of the 'Federation' knew or should have known that no

15   report of an acceptance of an April 1, 1982 "voluntary surrender" had ever

16   been submitted to it by the North Carolina medical board.

17   **13.** Those defendants of the 'Federation' knew or should have known that the

18   medical board has over a hundred years kept a transcribed and "regular

19   record of its proceedings [N.C.G.S. § 90-16 (a);  § 33 of 2019-191].

1    **14.** Those defendants of the 'Federation' knew or should have known that no

2    record of any proceeding of the North Carolina medical board and Dr.

3    Crawford appears in any records of the 1982 medical board meetings.

4    **15.** Those defendants of the 'Federation' knew or should have known that

5    "before the Board shall take disciplinary action against any license granted

6    by it, the licensee shall be given a written notice indicating the charges made

7    against the licensee" [N. C. G. S. § 90-14.2 (a); HB 228, Session Laws 2019,

8    Chapter 191].

9    **16.** Those defendants of the 'Federation' knew or should have known that there

10    is no record of the North Carolina Board of Medical Examiners ever

11    providing Dr. Crawford with any charges or "written notice of charges made

12    against the licensee."

13    **17.** Those defendants of the 'Federation' knew or should have known that in

14    1982 "any notice required by the laws of the medical board would have

15    required notice served by either a board member or "by an officer authorized

16    by law to serve process , or by registered mail, return receipt requested.   N.

17    C. G. S. § 90-14.3  [NC Session Laws 1995, Chapter 405, § 5].

18    **18.** Those defendants of the 'Federation' knew or should have known that the

19    May 1982 board had no record of any member of that board serving notice

20    on Dr. Crawford or evidence of any receipt for delivery of any "registered

1    mail" notice of disciplinary charges. N. C. G. S. § 90-14.3 [NC Session

2    Laws 1995, Chapter 405, § 5].

3    **19.** Those defendants of the 'Federation' knew or should have known that the

4    May 1982 board considered an unauthorized report of licensure surrender

5    and it then voted to accept it as only information.

6    **20.** Those defendants of the 'Federation' knew or should have known that the

7    May 1982 board vote closed the issue of "voluntary surrender."

8    **21.** Those defendants of the 'Federation' knew or should have known that no

9    report of an acceptance of an April 1, 1982 "voluntary surrender" had ever

10    been submitted to it by the North Carolina medical board.

11    **22.** That the defendants of the 'Federation' failed to use reasonable care to

12    determine the truth or falsity of the statement.

13    **COUNT SIX**

14    Plaintiff incorporates all the statements of fact in count one of the complaints by

15    reference thereto.  In this count four (4)  of this complaint, Plaintiff sues

16    defendant Henderson for the defamation and injury caused by the publishing of

17    the statement that Doctor Crawford was no longer authorized to practice

18    medicine in North Carolina because his license and authority to practice there

19    was accepted by the Board as "voluntarily surrendered."

1    Plaintiff incorporates all the statements of fact in count one through four (1-4)

2    of the complaints by reference thereto.  In this count six (6)  of this complaint,

3    Plaintiff sues defendant Henderson individually and in his official capacity as

4    Chief Executive Officer of the North Carolina Medical Board for the

5    defamation and injury caused by the publishing of the statement that Doctor

6    Crawford was no longer authorized to practice medicine in North Carolina

7    because his license and authority to practice there was acknowledged by the

8    Board as "voluntarily surrendered" on April 1, 1982.

9    Plaintiff intends to prove all the following facts are highly and substantially

10   more probable to be true than not true.

11   **1.**  That the defendant as an employee of the North Carolina Medical Board did

12       publish on the internet and to a specific third party in California that Dr.

13       Crawford's license to practice medicine in North Carolina had been

14       acknowledged by the State medical board as "voluntarily surrendered" on

15       April 1, 1982.

16   **2.** That the defendant Henderson did publish the statement as fact rather than

17       opinion on their website and in other places known to a third party.

18   **3.** That this false statement by the defendant Henderson chief administrative

19       officer for the North Carolina medical board was immensely derogatory and

1    damaging to Dr. Crawford's occupation, reputation for telling the truth, his

2    character, and the ability to attract high quality colleagues and patients.

3    **4.** That this third party to whom the false statement was communicated would

4    reasonably understand that the statement was about Dr. Crawford.

5    **5.** That this third party to whom the false statement was published would

6    understand that Dr. Crawford was no longer authorized to practice medicine

7    in North Carolina notwithstanding a May 1982 meeting of the NC medical

8    board.

9    **6.** That an average person would understand that defendant Henderson's

10   statement of a Board acknowledgement was an indication of a "disciplinary

11   action" as defined by the North Carolina board rules and customs (North

12   Carolina General Assembly, 2021).

13   **7.**  That defendant knew or should have known that the so-called

14   acknowledgement of April 1, 1982,  is not notarized as required for

15   acknowledgements under the Notary Practice Act.

16   **8.** That defendant knew or should have known that the so-called

17   acknowledgement of April 1, 1982, does not bear the seal of North Carolina

18   Board of Medical Examiners as an indication of the official business of the

19   North Carolina Board of Medical Examiners.

1  **9.** That defendant knew or should have known that the so-called

2  acknowledgement of April 1, 1982, does not bear the name of the secretary-

3  treasurer of the 1982 medical board as an indication of the official business

4  of the North Carolina Board of Medical Examiners.

5  **10.** That defendant knew or should have known that the so-called

6  acknowledgement of April 1, 1982, does not bear the name of the President

7  or any elected member of the 1982 Board of Medical Examiners as

8  indication of the official business of the North Carolina Board of Medical

9  Examiners.

10  **11.** That defendant knew or should have known that the so-called

11  acknowledgement of April 1, 1982, does not bear the of any person as an

12  indication of the official business of the North Carolina Board of Medical

13  Examiners.

14  **12.**   That the defendants of the 'Federation' failed to use reasonable care to

15  determine the truth or falsity of the statement.

16  **COUNT SEVEN**

17  Plaintiff incorporates all the statements of fact in count five (5)  of the complaints

18  by reference thereto.  Dr. Joe Dean Crawford sues defendant Chaudhry as chief

19  corporate officer and the Federation of State Medical Boards, Incorporated

20  ('Federation') and claims that they harmed him by making the following statement

1   to at least one third party in California and on the internet on or about March 19,

2   2021, that; Doctor Crawford was not competent to practice medicine in Maryland

3   because the Maryland board had "denied licensure" to plaintiff on December 31,

4   1996.

5       Plaintiff intends to prove all the following facts are highly and substantially

6   more probable to be true than not true.

7   **1.**   That the defendants and employees of the Federation of State Medical

8       Boards did publish on the internet and to a specific third party in California

9       that Dr. Crawford's application for a Maryland license to practice medicine

10       had been denied by the Maryland licensing board on December 31, 1996.

11   **2.** That the defendants of the 'Federation' did publish the statement as fact

12       rather than opinion on their website and in other places known to a third

13       party.

14   **3.** That this false statement by the defendant Federation and its chief officer

15       was immensely derogatory and damaging to Dr. Crawford's occupation,

16       reputation for telling the truth, and his character.

17   **4.** That this third party to whom the false statement was communicated would

18       reasonably understand that the statement was about Dr. Crawford.

5. That this third party to whom the false statement was published would understand that Dr. Crawford was unfit for the Maryland license to practice medicine for some unspecified reason on December 31, 1996.

6. That an average person would understand that defendant 'Federation' statements were an indication of a "disciplinary action" or other professional incompetence by Maryland law standards.

7. That those defendants of the 'Federation' knew or should have known that it was widely publishing that Dr. Crawford had what is known a "denial of initial licensure" in the State of Maryland.

8. That those defendants of the 'Federation' knew or should have known that a "denial of initial licensure" is required to be reported to the National Practitioner Data Bank by Maryland authorities if a "denial of initial licensure" ever did occur regarding Dr. Crawford.

9. That those defendants of the 'Federation' knew or should have known that neither the State of Maryland nor any of its medical licensure boards had ever made a report regarding Dr. Crawford to the National Practitioner Data Bank.

10. That those defendants of the 'Federation' knew or should have known that no report of a "initial licensure denial" exists in the National Practitioner Data Bank regarding Dr. Crawford and the Maryland authorities.

1  **11.**  That those defendants of the 'Federation' knew or should have known that

2  "[s]tate licensing and certification authorities must report to the NPDB

3  denial of initial and renewal applications for licensure or certification for

4  health care practitioners, entities, providers, or suppliers if they are adverse

5  actions resulting from formal proceedings."  See NPDB Guidebook.

6  **12.**  That those defendants of the 'Federation' knew or should have known that

7  there was no action "resulting from a formal proceeding" in Maryland on

8  December 31, 1996.

9  **13.**  That those defendants of the 'Federation' knew or should have known that

10  the last known proceeding of the Maryland licensing board during the month

11  of December of 1996 occurred during December 18th.

12  **14.**  That those defendants of the 'Federation' knew or should have known that

13  on December 18, 1996, the Maryland Board of Quality Assurance met in

14  closed session in Baltimore, Maryland to discuss Dr. Crawford's still

15  pending licensure application.

16  **15.**  That those defendants of the 'Federation' knew or should have known that

17  the Maryland Board of Physician Quality Assurance never did meet on New

18  Year's Eve of 1996, or at anytime on December 31, 1996.

1    **16.** That those defendants of the 'Federation' knew or should have known that

2       the minutes of that last meeting of the year for the Board of Physician

3       Quality Assurance ended with a comment regarding Dr. Crawford.

4    **17.** That those defendants of the 'Federation' knew or should have known that

5       the Board minutes simply stated on page three (3) of those minutes: " 6.

6       Crawford, Joe Dean, M.D. / Applicant (BKV)

7       No Action was necessary for this case."

8    **18.** That those defendants of the 'Federation' knew or should have known that

9       the closed meeting minutes became a matter of public record once they were

10      deposited in the Maryland State Archives after a ten (10) years period.

11   **19.** That those defendants of the 'Federation' knew or should have known that

12      the matter was reviewed by the United States District Court in two instances

13      as judicially noted in this matter.

14   **20.** That those defendants of the 'Federation' knew or should have known that

15      in 2001 the United States District Court for the District of Maryland held

16      that no final administrative decision had occurred in the matter of Dr.

17      Crawford's still pending application.  See: Crawford v. Seidman, in passim.

18   **21.** That the defendants of the 'Federation' failed to use reasonable care to

19      determine the truth or falsity of the statement.

20                              **COUNT EIGHT**

1.  Plaintiff incorporates all the statements of fact in counts one to four of the complaints by reference thereto Defendant Henderson and Plaintiff intends to prove all the following facts are highly and substantially more probable to be true than not true.

2.  Defendant Henderson used the seal of the North Carolina State in making publications under the color of law.

3.  That by vote of the North Carolina Board of Medical Examiners and as recorded in its October 13, 1979, minutes of its proceedings, Dr. Crawford was granted an unrestricted and permanent license to practice medicine.

4.  That the North Carolina Board of Medical Examiners reaffirmed the permanent nature of Plaintiff's right in the form of two (2) separate and special vote at the May 1982 meeting of that Board.

5.  None of the minutes and proceeding of the North Carolina Medical Board on file on its website reveal any disciplinary action against Dr. Crawford's permanent license which has never been surrendered.

6.  On January 4, 2021, as part of a *Mishler* style verification process Defendant published that Dr. Crawford was unlicensed subsequent to a public disciplinary action all while knowing the statements were false.

7. Defendant Henderson knew of should have known that January 4th verification statement concerning Dr. Crawford's record was false as there has been no disciplinary action against Dr. Crawford.

8. Defendant published this falsehood to California resident Joseph Salazar on January 4, 2021. See Complaint Exhibit One.

9. Subsequently Defendant Henderson followed up his January 4 letter under the seal of the State of North Carolina's medical board knowing that publication to third parties it would harm Plaintiff.

10. Defendant Henderson, in publishing the statement as an official one to the California Medical Board would severely harm his licensing opportunity.

11. Plaintiff complains that by defamation Defendant Henderson and the state medical board's neglect to provide procedural protections against harms by said defendant have harmed his property severely though the use color of state of law.

12. Resultingly, the protection authority explained in the May 1982 Board has been absent to prevent harm that could have been prevented with a procedural due process protection.

13. Plaintiff sues for the deprivation of his property right in his North Carolina license without notice or opportunity for a due process hearing in violation

1    of the Due Process and Equal Protection Clause of the Constitution.

2    Plaintiff asks the Court to enjoin further harm as is right and lawful.

3                              **COUNT NINE**

4    **1.**   Plaintiff incorporates all the statements of the public record as it pertains to

5          this Defendant Henderson and Plaintiff intends to prove all the following

6          facts are highly and substantially more probable to be true than not true.

7    **2.** Defendant Henderson used the seal of the North Carolina State in making

8          publications under the color of law.

9    **3.**   Defendant Henderson knew or should have known that by vote of the

10         North Carolina Board of Medical Examiners and recorded in its October 13,

11         1979, minutes of its proceedings, Dr. Crawford was granted an unrestricted

12         and permanent license to practice medicine.

13   **4.**   That the North Carolina Board of Medical Examiners reaffirmed the

14         permanent nature of Plaintiff's right in the form of two (2) separate and

15         special vote at the May 1982 meeting of that Board.

16   **5.**   None of the minutes and proceeding of the North Carolina Medical Board

17         on file on its website reveal any disciplinary action against Dr. Crawford's

18         permanent license which has never been surrendered.

6. On January 4, 2021, as part of a *Mishler* style verification process Defendant falsely published that Dr. Crawford was unlicensed subsequent to a failure to respond to a notice to "renew" his license on April 1, 1982.

7. Defendant Henderson knew of should have known that January 4th verification statement concerning Dr. Crawford's record was false as there has been no disciplinary action against Dr. Crawford.

8. Defendant Henderson knew of should have known that Dr, Crawford's license did not come up for renewal on April 1, 1982.

9. Defendant Henderson knew of should have known that in 1982 licenses were due to be registered for two years during the month of January of every other year.

10. Defendant Henderson knew of should have known that no board minutes reflected any other circumstance than that Plaintiff was then registered except for a few physicians. Minutes of NCMB, March 1982.

11. Defendant Henderson knew of should have known that no NC board had ever issue the required "certified notice" of opportunity to register late or lose privilege.

12. Defendant published this falsehood to California resident Joseph Salazar on January 4, 2021. See Complaint Exhibit One.

1  **13.** Subsequently Defendant Henderson followed up his January 4 letter under

2  the seal of the State of North Carolina's medical board knowing that

3  publication to third parties it would harm Plaintiff.

4  **14.** Defendant Henderson, in publishing the statement as an official one to the

5  California Medical Board would severely harm his licensing opportunity.

6  **15.** Plaintiff complains that by defamation Defendant Henderson and the state

7  medical board's neglect to provide procedural protections against harms by

8  said defendant have harmed his property severely though the use color of

9  state of law.

10  **16.** Resultingly, with the authority of the North Carolina medical board

11  members has been absent to prevent harm that could have been prevented

12  with a procedural due process protection.

13  **17.** Plaintiff sues for the deprivation of his property right in his North Carolina

14  license without notice or opportunity for a due process hearing in violation

15  of the Due Process and Equal Protection Clause of the Constitution.

16  Plaintiff asks the Court to enjoin further harm as is right and lawful.

17  +

18

19

# COUNT TEN

1.   Plaintiff incorporates all the requests for judicial notice and decree as to this Defendant Henderson and Plaintiff intends to prove all the following facts are highly and substantially more probable to be true than not true.

2.   Defendant Henderson used the seal of the North Carolina State in making publications under the color of law.

3.   Defendant Henderson knew or should have known that he was making it appear that his statement was authorized by the North Carolina State medical licensing authority.

4.   Defendant Henderson knew or should have known that by vote of the North Carolina Board of Medical Examiners  as recorded in its October 13, 1979, minutes of its proceedings, Dr. Crawford was granted an unrestricted and permanent license to practice medicine.

5.   Defendant Henderson knew or should have known that the North Carolina Board of Medical Examiners reaffirmed the permanent and active nature of Plaintiff's right and licensure in the form of two (2) separate and specially called  votes at the May 1982 meeting of that Board.

6.   Defendant Henderson knew or should have known that  none of the minutes and proceeding of the North Carolina Medical Board on file on its

1   official government website revealed any disciplinary action against Dr.

2   Crawford's permanent and active license which had never been surrendered.

3   **7.**   Defendant Henderson knew or should have known that the authority to

4   report that a physician status is "inactive" did not arise until 2019 when

5   House Bill 228 became Chapter 191 (*'An Ac to Modernize Laws Pertaining*

6   *to the North Carolina Medical Board and the Practice of Medicine'*).

7   **8.**   Defendant Henderson knew or should have known that retrospective

8   Chapter 191 first authorized a report of "inactive" in precisely four limited

9   circumstances.

10   a.   "inactive upon a licensee's request,"

11   b.   "licensee's failure to register annually,"

12   c.   "licensee's voluntary surrender," OR

13   d.   A "disciplinary order."

14   **9.**   Defendant Henderson knew or should have known that as of the 2019

15   effective date of the Chapter, none of the four circumstances applied to Dr.

16   Crawford's record before the State Medical Board.

17   **10.** Defendant Henderson knew or should have known that publication of a

18   false report would, therefore have a dilatorious effect on his California

19   application for licensure.

1    **11.** Defendant Henderson knew or should have known that publication of the

2    same material on the Board's official website would harm Plaintiff's

3    reputation and professional standing.

4    **12.** On January 4, 2021, as part of a *Mishler* style verification process

5    Defendant published that Dr. Crawford's license status was "inactive" and

6    unauthorized to practice in North Carolina . all while knowing the statement

7    was false.

8    **13.**Defendant Henderson knew of should have known that January 4th

9    verification statement concerning Dr. Crawford's  record  was false as there

10    has been no disciplinary action against Dr. Crawford.

11    **14.**Defendant published this material on January 4 to Joseph Salazar, a resident

12    of California who was referred in the publication to a website to find more

13    damaging or otherwise sensitive information.

14    **15.** Subsequently Defendant Henderson followed up his January 4 letter under

15    the seal of the State of North Carolina's medical board knowing that

16    publication to third parties it would harm Plaintiff.

17    **16.** Defendant Henderson, in publishing the statement as an official one to the

18    California Medical Board would severely harm his licensing opportunity.

19    **17.** Plaintiff complains that by defamation Defendant Henderson and the state

20    medical board's neglect to provide procedural protections against harms by

1   said defendant have harmed his property severely though the use color of

2   state of law.

3   **18.** Resultingly, with the authority of the North Carolina medical board

4   members has been absent to prevent harm that could have been prevented

5   with a procedural due process protection.

6   **19.** Plaintiff sues for the deprivation of his property right in his North Carolina

7   license without notice or opportunity for a due process hearing in violation

8   of the Due Process and Equal Protection Clause of the Constitution.

9   Plaintiff asks the Court to enjoin further harm as is right and lawful.

10                              **COUNT ELEVEN**

11   **20.** Plaintiff incorporates all the statements of fact in counts one to four of the

12   complaints by reference thereto Defendant Henderson and Plaintiff intends

13   to prove all the following facts are highly and substantially more probable to

14   be true than not true.

15   **21.**Defendant Henderson used the seal of the North Carolina State in making

16   false publications under the color of law.

17   **22.** That by vote of the North Carolina Board of Medical Examiners and as

18   recorded in its October 13, 1979, minutes of its proceedings, Dr. Crawford

19   was granted an unrestricted and permanent license to practice medicine.

1    **23.**  That the North Carolina Board of Medical Examiners reaffirmed the

2         permanent nature of Plaintiff's right in the form of two (2) separate and

3         special vote at the May 1982 meeting of that Board.

4    **24.**  None of the minutes and proceeding of the North Carolina Medical Board

5         on file on its website reveal any disciplinary action against Dr. Crawford's

6         permanent license which has never been surrendered.

7    **25.**  On January 4, 2021, as part of a *Mishler* style verification process

8         Defendant published that Dr. Crawford was unlicensed subsequent to a

9         public disciplinary action all while knowing the statements were false.

10   **26.** Defendant Henderson knew of should have known that January 4th

11        verification statement concerning Dr. Crawford's  record  was false as there

12        has been no disciplinary action against Dr. Crawford.

13   **27.** Defendant published this falsehood to California resident Joseph Salazar on

14        January 4, 2021.  See Complaint Exhibit One.

15   **28.**  Subsequently Defendant Henderson followed up his January 4 letter under

16        the seal of the State of North Carolina's medical board knowing that

17        publication to third parties it would harm Plaintiff.

18   **29.** Defendant Henderson, in publishing the statement as an official one to the

19        California Medical Board would severely harm his licensing opportunity.

1    **30.** Plaintiff complains that by defamation Defendant Henderson and the state

2    medical board's neglect to provide procedural protections against harms by

3    said defendant have harmed his property severely though the use color of

4    state of law.

5    **31.** Resultingly, with the authority of the North Carolina medical board

6    members has been absent to prevent harm that could have been prevented

7    with a procedural due process protection.

8    **32.** Plaintiff sues for the deprivation of his property right in his North Carolina

9    license without notice or opportunity for a due process hearing in violation

10    of the Due Process and Equal Protection Clause of the Constitution.

11    Plaintiff asks the Court to enjoin further harm as is right and lawful.

12

## COUNT TWELVE

13    1. Joseph Salazar did defame and damage the reputation of the Plaintiff by

14    republication of the March 19, 2021, but added on April 9, 2021 that Dr.

15    Crawford was not licensed in New York and would not be able to become

16    licensed without a new application.

17    2. Defendant Salazar knew that statement was false.

18    3. The false statement was published to a third party.

4. The false statement damaged Plaintiff's reputation and occupational quality while making these statement known to at least two other California residents.

5. Defendants make the statements with callous disregard for the Plaintiff while knowing the statements would cause harm.

6. Defendant acted under color of law in depriving the Plaintiff of valuable property and liberty interests without hearing or due process of law in violation of Title 42 of the United States Code at Section 1983.

## COUNT THIRTEEN

1. Plaintiff incorporates by reference all facts in Count One and Count Twelve to Complain that the California Medical Board is negligent in supervision and control of employees like Joseph Salazar & Kathryn Taylor.

2. Plaintiff intends to prove that this negligence Aa pattern of discrimination authorized or sanctioned by that agency in that it requires demographic information at the onset of the application.

3. The *de facto* racial discrimination exists by virtue of this unlawful demand.

4. That the demand takes the form of a color photographic image that will be used to determine ethnicity and racial identity.

5. That is common knowledge that the California Medical Board's practices a resulting in a racial disparity whenever the race or ethnicity of the applicant is known.

6. That Plaintiff became a victim of this practice in his licensing application experience.

7. That Plaintiff grieves for an injunction to this practice despite damages.

8.

## COUNT FOURTEEN

1. Plaintiff, a Diplomate of the National Board of Medical Examiners of the United States sues that same body for breach of contract in that it failed to perform a contractual and paid for service by immediately forwarding evidence of Diplomate status to the California State Medical Board in a timely manner.  The delay caused Plaintiff economic harm and loss of valuable property.

2. No excuse exists for the breach of contract which may have been malicious or gross negligence.

**COUNT FIFTEEN**

1. Joseph Salazar did defame and damage the reputation of the Plaintiff by republication of the March 19, 2021, but added on March 22, 2021 that Dr. Crawford was not licensed in New York and would not be able to become licensed without a new application.

2. Defendant Salazar knew that statement was false.

3. The false statement was published to a third party.

4. The false statement damaged Plaintiff's reputation and occupational quality while making these statement known to at least two other California residents.

5. Defendant make the statements with callous disregard for the Plaintiff while knowing the statements would cause harm.

6. Defendant acted under color of law in depriving the Plaintiff of valuable property and liberty interests without hearing or due process of law in violation of Title 42 of the United States Code at Section 1983.

I DO SOLEMNLY DECLARE AND AFFIRM UNDER THE PENALTIES OF PERJURY THAT ALL OF THE AFOREGOING FACTS IN SUPPORT OF THIS COMPLAINT AND TRUE AND CORRECT TO THE BEST OF MY PERSONAL KNOWLEDGE.                                  03/21/22